**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMPIRE ROOFING, INC.**<br>**4801 Esco Drive**<br>**Fort Worth, TX 76140, and**<br><br>**TECTA AMERICA CORP.**<br>**9450 W. Bryn Mawr Avenue**<br>**Rosemont, IL 60018,**<br>                    **Plaintiffs**<br><br>**v.**<br><br>**RAPID INSTALLATION GROUP, INC.**<br>**17 East 4th Street**<br>**Northampton, PA 18067,**<br>                    **Defendant** | **Case Number: 5:26-cv-3635**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, by and through counsel, hereby allege and demand as follows.

### The Parties

1.      Plaintiff, Empire Roofing, Inc. (a Tecta America Company) ("Empire Roofing"), is a corporation duly organized and existing under the laws of the State of Texas with its principal place of business at the above-captioned address in Texas.

2.      Plaintiff, Tecta America Corp.  ("Tecta"), is a corporation organized and existing under the laws of the State of Illinois with a principal place of business located at 9450 W. Bryn Mawr Avenue, Rosemont, IL 60018 .

3.      At all times, Empire Roofing and Tecta were engaged in the business and trade of roof construction, maintenance, and repairs, and maintained a corporate relationship.

4. Defendant, Rapid Installation Group, Inc. ("RIG") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 17 E. 4th Street, Northampton, PA 18067.

5. At all times relevant hereto, RIG was in the construction industry, providing temporary containment and interior protection systems for construction projects.

## Jurisdiction and Venue

6. Jurisdiction is proper under 28 U.S.C. §1332, as this action is between citizens of different states (specifically, Plaintiff Empire Roofing is a Texas corporation; Tecta is an Illinois corporation; and Defendant is a Pennsylvania corporation), and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. §1391(b)(1) because Defendant resides in this judicial district, namely Northampton County, Pennsylvania, and is subject to this Court's personal jurisdiction.

## Statement of Facts

8. Plaintiffs were engaged to provide roofing repair and construction services with regard to property known as Brothers Produce / Dallas Food Center at 2600 McCree Road in Garland, Texas 75041 (the "subject property").

9. In furtherance of this construction, Empire Roofing retained RIG under a subcontract to provide interior protection at the subject property, namely, to protect the interior of the subject property while Plaintiffs performed roofing repairs and related construction work.

10. A copy of the operative subcontract as to such work is attached hereto and incorporated herein as Exhibit "A."

11. As set forth therein, under paragraph 13(a), RIG agreed to

indemnify, pay for the defense and hold harmless [Empire Roofing] and Tecta … from and against all claims… and expenses, including attorney's fees, arising out of or resulting from (1) negligent acts or omissions of [RIG] or anyone directly or indirectly employed by [RIG]; (2) breach of this Subcontract; (3) [RIG's] work not being performed properly; … and (5) claims by third parties who allege they have been injured or damaged by actions of [RIG].

12. In furtherance of its work under the subcontract, RIG installed reinforced polyethylene sheeting underneath the roof structure throughout the subject property.

13. Later in the roofing project, when sheeting was being removed, mold was discovered in numerous areas of the sheeting, particularly above areas of the subject property that had been used for cold storage.

14. This mold was determined to have resulted from condensation caused by the interaction of warm exterior air, the colder cold-storage environs below, and the reinforced polyethylene vapor barrier installed by Defendant.

15. Despite the fact that Defendant markets itself as employing "highly trained and qualified installers" of such sheeting systems, and Defendant was aware that substantial portions of the subject property were used for cold storage, Defendant failed to undertake reasonable measures to prevent condensation and resulting mold growth - a known and foreseeable risk within the specialized expertise of contractors performing such work with temporary containment systems.

16. After the mold was uncovered, the owner of the subject property demanded that Plaintiffs pay for mold-related evaluations, remediation, repair costs, and related damages incurred by both the owner and multiple tenants at the subject property.

17.     Plaintiffs paid for (and/or reimbursed others for) investigation costs, remediation expenses, repair costs, and related losses, totaling in excess of $1,760,000.00.

18.     As soon as the mold was uncovered, Plaintiffs asked Defendant (and its liability insurance carriers) to defend and indemnify Plaintiffs for such claims and losses, and Defendant (and its insurers) refused to do so.

## COUNT I – CONTRACTUAL INDEMNITY

19.     The allegations contained in the preceding paragraphs are incorporated as if fully set forth here.

20.     As noted in detail above, under the attached operative subcontract RIG agreed to defend, indemnify and hold harmless Plaintiffs with respect to claims arising from RIG's negligent acts or omissions, breach of the Subcontract, improper performance of its work, and/or claims asserted by third parties alleging damages arising from RIG's conduct.

21.     RIG breached the Subcontract, committed negligent acts and omissions, and did not perform its work properly, including, *inter alia*, the following acts and omissions, which resulted in claims and damages asserted by third parties:

   a.     Failed to ventilate the cavity above the polyethylene sheeting to prevent condensation accumulation;

   b.     Failed to use any dehumidification to keep relative humidity at levels sufficient to prevent condensation, which is particularly important over cold storage spaces;

   c.     Created or permitted a sealed vapor condition conducive to condensation formation;

   d.     Failed to recommend or implement reasonable measures to mitigate foreseeable temperature differentials contributing to condensation formation;

   e.     Failed to limit the duration of temporary containment in the cold storage areas most susceptible to condensation generation;

   f.     Failed to inspect, monitor, or dry such areas regularly, or to instruct anyone else involved with the roof project to do so;

g.    Failed to use, as an alternative, insulated temporary containment in the areas of cold-storage use to reduce condensation formation;

h.    Failed to recommend, require, or instruct other contractors or project participants to undertake reasonable preventative measures, despite RIG's superior expertise concerning temporary containment systems and condensation risks; and/or

i.    Failed to properly educate, train or instruct its agents or employees as to these issues and how to avoid such damages.

22.    As such, RIG was contractually obligated to defend and indemnify Plaintiffs with respect to the claims asserted against Plaintiffs and the damages and losses incurred thereby.

23.    RIG has breached its Subcontract by, *inter alia*, failing to defend and indemnify Plaintiffs for the claims, losses, and damages arising from RIG's acts, omissions, and breaches of the Subcontract.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant in an amount in excess of $1,760,000.00, together with attorneys' fees, interest, delay damages, costs, and such other relief as this Court deems just and appropriate.

## COUNT II – CONTRACTUAL INDEMNITY (INSURANCE)

24.    The allegations contained in the preceding paragraphs are incorporated as if fully set forth here.

25.    As set forth in the attached Subcontract, under paragraph 7, RIG agreed to provide certain specific insurance related to the project at the Subject Property, which included the following specifications and relief:

-    "Commercial General Liability insurance written on an occurrence basis using a commercial general liability form (1988 or equivalent) and including contractual liability, products /completed operations and no limitation for explosion, collapse, residential structures, water damage and underground hazards. Limits of: $1,000,000 Bodily Injury and Property Damage Combined Per Occurrence…." Para. 7(c).

- "Commercial Umbrella or Excess Policy with limits not less than $3,000,000 providing excess coverage over the Subcontractor's Commercial General Liability … insurance coverages, written on same form as underlying coverage…." Para. 7(e).

- "Mold coverage shall be afforded by either the Subcontractor's general liability policy or pollution policy, providing coverage at minimum limits of $1,000,000 per occurrence and naming Tecta as an additional insured." Para. 7(g).

- "Tecta, General Contractor, Owner and any other parties whom Tecta is required to name as additional insureds shall be additional insureds on Subcontractor's commercial general liability, pollution, automobile liability and excess umbrella liability insurance policies. … Additional insured coverage shall apply to completed operations." Para. 7(i).

- "All policies maintained by Subcontractor will be primary and non-contributory in the event of any loss arising out of Subcontractor's performance and shall provide that where there is more than one insured, the policy will operate, except for limits of liability, as if there were a separate policy covering each insured." Para. 7(n).

26.    The Subcontract specifically stated that if Defendant failed to comply with the insurance requirements, then Plaintiffs were entitled to indemnification of all costs, damages, losses and expenses arising out of or relating to RIG's work or its operations.

27.    As noted above, after the mold was discovered and the underlying claims were made upon Plaintiffs, they demanded a defense and indemnity from RIG and its liability insurers; and neither Defendant nor its insurers agreed to defend or indemnify Plaintiffs for such claims.

28.    This was despite the fact that Plaintiffs were supposed to be additional insureds and protected under RIG's insurers' policies, as detailed above.

29.    To the extent that Plaintiffs were not covered and/or reimbursed by RIG's insurers because Defendant failed to comply any of the above insurance requirements, Plaintiffs are

entitled to indemnification for all costs, damages, losses and expenses arising out of or relating to RIG's work or its operations.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant in an amount in excess of $1,760,000.00, together with attorneys' fees, interest, delay damages, costs, and such other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


**de LUCA LEVINE, LLC**


Dated:   May 28, 2026        BY:   _____

Kenneth Levine, Esquire (PA ID. 60984)
301 E. Germantown Pike, Suite 300
E. Norriton, PA 19401
Tel.: (215) 588-5085
KLevine@deLucaLevine.com